F. & T. Construction Company, Inc. *v.* Department of Environmental Resources.

Argued May 4, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Joseph P. Mylotte,* with him *Stephen J. McEwen, Jr.,* and *McEwen, McEwen & Mylotte,* for appellant.

*Elissa Parker,* Assistant Attorney General, for appellee.

OPINION BY JUDGE BLATT, July 11, 1972:

The appellant is planning to develop a tract of approximately 53 acres in the Borough of Brookhaven (Borough), Delaware County, by constructing 538 apartment units thereon. It entered into an agreement to purchase the land, and it engaged the services of architects, engineers and attorneys, incurring expenses amounting to $76,400.00. It was estimated that the total cost of the development would be approximately $7,000,000. The appellant received formal approval of its subdivision plans from the Borough on February 9, 1971, but certain conditions pertaining to access roads and to water and sewer grades were attached to the approval and not met until May 13, 1971. The appellant also submitted its plans and received approval of them from the Pennsylvania Department of Labor and Industry on July 16, 1971, and from the Pennsylvania Department of Transportation on September 16, 1971.

On June 2, 1971, the Borough Mayor was notified by the Department of Environmental Resources (Department) that no additional discharge into the Bor-

ough's sewer system would be permitted without the approval of the Department. The Borough's sewer system is connected to and part of that of the City of Chester, whose treatment facilities the Department had found to be both organically and hydraulically overloaded. A ban on additional discharge was therefore placed on the entire system, but an exception was permitted for new construction for which building permits had been issued prior to June 2, 1971, the date of the Departmental order.

The appellant, not having filed an application for a building permit prior to June 2, 1971, wrote a letter to the Department's Regional Sanitary Engineer on July 23, 1971, requesting an exception to the June 2 ban, and said that this exception was mandated because of the large expenditures made and because the date cutoff criterion, i.e., the issuance of a building permit, was inequitable. The requested exception was denied, and the appellant appealed to the Department. Following a hearing, the Department handed down its adjudication, which again denied the exception. The appellant thereafter appealed to this Court, alleging that insufficient evidence had been introduced to provide a valid basis for the Departmental ban, and that the date of issuance of a building permit was an unreasonable and discriminatory criterion for permitting an exception to the ban on additional discharge.

The Department is subject to the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, 71 P.S. §1710.1 et seq., wherein Section 44, 71 P.S. §1710.44 provides that this Court shall affirm an adjudication: "unless it shall find that the same is in violation of the constitutional rights of the appellant, or is not in accordance with law . . . or that any finding of fact made by the agency and necessary to support its adjudication is not supported by substantial evidence." Our

scope of review in an appeal from the Department is thus to determine whether or not there has been a manifest abuse of discretion or an arbitrary execution of the Department's duties. *Sierra Club v. Sanitary Water Board*, 3 Pa. Commonwealth Ct. 110, 281 A. 2d 256 (1971). Upon a careful review of the appellant's allegations, we must conclude that there has been no such abuse of discretion or arbitrary execution of Departmental duty, and we must, therefore, affirm the adjudication.

The appellant has contended that there was insufficient evidence introduced at the hearing to justify the Department's imposition of the ban on any additional discharge into the sewer system. Even if this were true, however, it would be immaterial, for the object of the procedure begun by the appellant was not to challenge the validity of the ban, but to obtain an exception from it. The burden must, therefore, be on the appellant to show that it is entitled to an exception. The Department has clearly been given the power to prevent the discharge of sewage into a sewer system by the Clean Streams Law, Act of June 22, 1937, P. L. 1987, §202, as amended, 35 P.S. §691.202.[1] The Department has exercised this power by enacting a regulation which provides that: "No person or municipality shall authorize or permit the added discharge of sewage or industrial wastes into a sewer, sewer system or treat-

---

[1] "No municipality or person shall discharge or permit the discharge of sewage in any manner, directly or indirectly, into the waters of this Commonwealth unless such discharge is authorized by the rules and regulations of the board or such person or municipality has first obtained a permit from the department. . . . For the purposes of this section, a discharge of sewage into the waters of the Commonwealth shall include a discharge of sewage by a person or municipality into a sewer system or other facility owned, operated or maintained by another person or municipality and which then flows into the waters of the Commonwealth."

ment plant owned or operated by such person or municipality without written authorization from the Department where such person or municipality has previously been notified by the Department that the sewer, sewer system or treatment plant is not capable of conveying or treating additional sewage or industrial wastes. . . ."[2] The notice so required was given by the Department to the Borough.

At the hearing, an engineer for the Department testified as to the existence of the ban, the extent of the ban, and the reason for the ban—the overloading of Chester's treatment facilities, to which Brookhaven's system is attached. This was sufficient evidence to establish that the ban existed and what its purpose was. The burden then shifted to the appellant to show why it was entitled to an exception. If the validity of the ban was to be questioned, this should have been done when the ban was initially put into effect.[3] In a collateral attack such as the appellant chose to mount, the burden must be on the appellant to show that the ban

---

[2] Department Regulation §91.33(b).

[3] It has been provided in Section 7 of the Clean Streams Law, as amended, 35 P.S. §691.7, that any person or municipality aggrieved by any action of the Department may appeal to the Sanitary Water Board. "The board may adopt rules and regulations establishing the procedure for, and limiting the time of, the taking of such appeals." By the Act of December 3, 1970, P. L.    , No. 275, §30, 71 P.S. §510.103, the functions of the Sanitary Water Board were transferred to the Department. The Department enacted Regulation §21.21(a), which provides: "In cases where appeals are authorized by statute or regulation of the Department, such appeal shall be in writing and shall be filed with the board within 15 days from the date of service of written notice of an action of the department or local agency." Therefore, it would appear that any direct attack on the validity of the ban should have been made by an appeal taken within 15 days of the June 2 letter. In such an appeal the burden would have been on the Department to justify the validity of the ban.

is invalid, but no evidence to that effect was even introduced.

The appellant also contends that the date of issuance of a building permit was improperly established as the criterion for allowing an exemption to the ban on further discharge. It suggests that a more reasonable criterion would have been the subdivision approval date. Needless to say, the appellant prefers this latter date because it would work to his advantage in this case. But what of the situation where no subdivision approval is necessary and a builder may have already begun work under a building permit? The use of the date of issuance of a building permit as the cut-off date is in our view a reasonable standard for this purpose.

For the above reasons, therefore, we issue the following

### ORDER

Now, July 11, 1972, the order of the Department of Environmental Resources is hereby affirmed.