## In re Sellersville Borough

*Samuel G. Moyer,* for appellant.

*Douglas R. Blavey,* for Department of Environmental Resources.

BROUGHTON, Chairman of the Board, July 31, 1973.—This matter is before the board on an appeal filed by Sellersville Borough (Sellersville) from an order of the Department of Environmental Resources (department).

In this order, dated March 10, 1972, the department made findings that the sewage treatment facilities of the Perkasie Borough Authority (authority) to which the Sellersville sewer collection system is "tributary" was receiving a waste load equal to or in excess of the load for which the facilities were designed and that such "hydraulic overloading" of these facilities was resulting in pollution or a danger of pollution to the waters of the Commonwealth.

In this order, the department directed Sellersville to prohibit any additional discharge into its sanitary sewer system without written authorization from the department, with the exception that such prohibition did not apply to connections to approved sewers serving new construction for which Sellersville had issued building permits prior to the date when it received the order. The department also directed Sellersville to submit a letter setting forth procedures being taken to enforce the prohibition of such connection to its sewer system.

In its appeal, Sellersville contended that on dates prior to the issuance of the order both it and the authority had retained an engineering firm to study the location and reduction of excess water which was entering the collection systems in each municipality, that the sewer connection ban was detrimental to Sellersville for the reason that it would create a freeze on additional revenues, presumably from increased real estate tax collections created by new construction, and create a financial impediment to corrective action by Sellersville, that the order was unduly restrictive and that the order was arbitrary, capricious and without justification in the law.

In its pre-hearing memorandum, Sellersville contended that the order which imposed the sewer connection ban on Sellersville was invalid and improper for several reasons, as follows:

1. The department did not give Sellersville prior notice that the authority sewage treatment facilities were not capable of treating additional sewage;

2. There was no pre-order finding by the department that Sellersville was in violation of The Clean Streams Law of June 22, 1937, P. L. 1987, as amended, 35 PS §§691.1, et seq.;

3. The department was bound to give Sellersville a reasonable opportunity to study and to alleviate the problems which gave rise to the alleged violations of The Clean Streams Law, supra;

4. Since the Sellersville sewer system operation was not directly related to the violation at the Perkasie Borough Authority sewage treatment facilities, the department was required to find that remedies other than a sewer connection ban would be inadequate to effect a correction of the violation;

5. The department did not consider economic hard-

ships upon Sellersville when the sewer connection ban order was issued;

6. The order was unconstitutional.

Hearings on this appeal were held before M. Melvin Shralow, Esq., Hearing Examiner, on September 7 and September 29, 1972.

In its memorandum of law, filed following the conclusion of the hearing, Sellersville contended that this order was invalid because Sellersville was not given a hearing prior to the issuance thereof and because there was no prior notice to Sellersville that the order was going to be issued. . . .

## DISCUSSION

By virtue of a written agreement dated August 5, 1957, by and between Sellersville and the authority, the sewage collected in the Sellersville sewer collection system has been discharged to the authority sewer collection system, from which it has been transported, together with the sewage collected in the authority sewer collection system, for treatment at the authority sewage treatment plant.

Although Sellersville expressly agreed that the sewage collected in its sewer collection system would contain no storm water, roof, surface or cellar water drainage, and that it would keep and maintain its sewer collection system in good repair and operating conditions at all times, this clearly has not been the case.

The Sellersville sewer collection system and the authority sewer collection system together have been and are being infiltrated by large quantities of ground water run-off and surface water run-off.

The department received reports from representatives of the Bucks County Department of Health, in

June 1971, that the authority sewage treatment plant was, from time to time, being overloaded as the result of the combination of sewage and the large quantities of water being carried to it by virtue of the infiltration of the collection systems.

There was no evidence, in June 1971, that such overloading of the sewage treatment plant created a situation where the sewage being carried thereto was not receiving efficient treatment. The department did, however, contemplate the issuance of an infiltration correction order as the result of the information which it received in June 1971.[1]

The situation changed dramatically on January 4, 1972. On that date, Peter J. Noll, an environmental protection specialist employed by the Bucks County Department of Health, inspected the authority sewage treatment plant and observed raw sewage being discharged from a bypass pipe at the plant to the waters of the Commonwealth, to wit, Perkiomen Creek. This finding was verified by Everett C. Hogg, a sanitary engineer employed by the Bucks County Department of Health, on February 15, 1972. Mr. Hogg observed large quantities of raw sewage being bypassed around the treatment plant and being discharged into Perkiomen Creek.

These findings gave rise to the order of March 10, 1972, in which the department imposed a sewer connection ban upon Sellersville, with certain exceptions not relevant to this proceeding.[2]

---

[1] At no time relevant to this proceeding was an infiltration correction order issued to the authority or to Sellersville by the department.

[2] The sewer connection ban did not apply to connections to approved sewers serving new construction for which Sellersville had issued building permits prior to the date when it received the order.

Section 202 of The Clean Streams Law, supra, 35 PS §691.202, provides, in pertinent part, as follows:

"§691.202 Sewage Discharges

"No municipality or person shall discharge or permit the discharge of sewage in any manner, directly or indirectly, into the waters of this Commonwealth unless such discharge is authorized by the rules and regulations of the board or such person or municipality has first obtained a permit from the department."

When, as here, raw sewage is discharged from a bypass pipe directly into Perkiomen Creek, it is obvious that there is a violation of section 202, supra. See F. & T. Construction Company, Inc. v. Department of Environmental Resources, 6 Comm. Ct. 59, 293 A. 2d 138, 140 (1972).

Since this bypassing is occurring at a sewage treatment plant which is neither owned nor operated and maintained by Sellersville, we must decide, initially, whether Sellersville is in violation of said section.

The Sellersville sewer collection system has been and is being infiltrated by large quantities of ground water run-off and surface water run-off. As the result of the increased flow to the authority sewage treatment plant caused, at least in part, by this infiltration, the pumps at the plant are incapable of pumping the entire flow into the treatment area. Bypassing occurs and raw sewage is discharged into the waters of the Commonwealth.

We conclude that in permitting this infiltration of its sewer collection system to exist and with the attendant consequences of this infiltration, Sellersville is in violation of section 202, supra.

Our conclusion is buttressed by the following languate contained in section 202, supra:

"For the purposes of this section, *a discharge of*

*sewage into the waters of the Commonwealth shall include a discharge of sewage by a person or municipality into a sewer system or other facility owned, operated or maintained by another person or municipality and which then flows into the waters of the Commonwealth.*" (Italics supplied.)

This provision is clearly applicable to Sellersville.

We next turn to the question of whether the department had the authority to issue this sewer connection ban order to Sellersville.

Section 5(d)(2) of The Clean Streams Law, supra, 35 PS §691.5(d)(2), provides that the department shall have the power and that its duty shall be to issue such orders as may be necessary to implement the provisions of The Clean Streams Law, or the rules and regulations of the board.

Section 203 of The Clean Streams Law, supra, provides, in pertinent part, as follows:

"§691.203 Municipal Sewage

". . .

"(b) the department may issue appropriate orders to municipalities where such orders are found to be necessary to assure that there will be adequate sewer systems and treatment facilities to meet present and future needs or otherwise to meet the objectives of this act . . . Such orders may prohibit sewer system extensions, additional connections, or any other action that would result in an increase in the sewage that would be discharged into an existing sewer system or treatment facility."

Section 610 of The Clean Streams Law, supra, provides, in pertinent part, as follows:

"§691.610. Enforcement Orders.

"The department may issue such orders as are necessary to aid in the enforcement of the provisions of this act. Such orders shall include, but shall not be

limited to, orders modifying, suspending or revoking permits and orders requiring persons or municipalities to cease operations of an establishment which, in the course of its operation, has a discharge which is in violation of any provision of this act. Such an order may be issued if the department finds that a condition existing in or on the operation involved is causing or is creating a danger of pollution of the waters of the Commonwealth, or if it finds that the permittee, or any person or municipality is in violation of any relevant provision of this act, or of any relevant rule, regulation or order of the board or relevant order of the department: . . . The department may, in its order, require compliance with such conditions as are necessary to prevent or abate pollution or effect the purposes of this act. An order issued under this section shall take effect upon notice, unless the order specifies otherwise. An appeal to the board of the department's order shall not act as a supersedeas: Provided, however, That, upon application and for cause shown, the board or the Commonwealth Court may issue such a supersedeas. The right of the department to issue an order under this section is in addition to any penalty which may be imposed pursuant to this act. The failure to comply with any such order is hereby declared to be a nuisance."

We find that in these sections the legislature has provided clear authority to the department to issue the type of order which was issued to Sellersville. We conclude that the department was not required to give notice to Sellersville that it was contemplating the issuance of this order, nor was the department required to enter into a fact-finding hearing prior to the issuance of this order.

Sellersville takes the position that sections 203(b) and 610 of The Clean Streams Law, supra, each

require the department to make positive findings as to the necessity for its orders and that notice and a hearing are prerequisites to the validity of those findings.

Sellersville directs our attention to certain language contained in section 91.33(b) of Chapter 91 of the Rules and Regulations of the Department, adopted September 2, 1971, as further authority for its position. That language is as follows:

"§91.33. Permit Requirements.

". . .

"(b) No person or municipality shall authorize or permit the added discharge of sewage or industrial wastes into a sewer, sewer system or treatment plant owned or operated by such person or municipality without written authorization from the Department *where such person or municipality has previously been notified by the Department that the sewer, sewer system or treatment plant is not capable of conveying or treating additional sewage or industrial wastes,* or is not operated or maintained in accordance with the permit or applicable orders, rules and regulations." (Italics supplied.)

We find that the "previous notification" required can be and is, in this case, in the form of the order which was issued to Sellersville.

Furthermore, Sellersville has overlooked the existence of the provisions contained in section 20 of the Act of December 3, 1970, P. L. 834 (No. 275), 71 PS §510-21, which act was added to the Administrative Code of April 9, 1929, P. L. 177, 71 PS §510-1, et seq. This section provides, in pertinent part, as follows:

"§510-21. (Adm. Code §1921-A) Environmental Hearing Board

". . .

". . .

"(c) Anything in any law to the contrary notwith-

standing, any action of the Department of Environmental Resources may be taken initially without regard to the Administrative Agency Law, but no such action of the department adversely affecting any person . . . shall be final as to such person until such person has had the opportunity to appeal such action to the Environmental Hearing Board; provided, however, that any such action shall be final as to any person who has not perfected his appeal in the manner hereinafter specified.

"(d) An appeal taken to the Environmental Hearing Board from a decision of the Department of Environmental Resources shall not act as a supersedeas, but, upon cause shown and where the circumstances require it, the department and/or the board shall have the power to grant a supersedeas."

We conclude that this section certainly provides authority to the department to, inter alia, issue an order without previous notification to the party against whom it is directed.

When such an order is issued, the party against whom it is directed may request a supersedeas to stay its enforcement, which Sellersville did not do, or appeal to this board for a review of the validity of the order, which Sellersville has done.

Sellersville argues that under fundamental principles of due process applicable to administrative proceedings as well as judicial proceedings, the department could not validly issue this order without prior notice and hearing.

It is well established, however, that due process of law is not denied when prescribed administrative procedure is faithfully pursued upon due notice and with an opportunity to be heard before the matter becomes final: Commonwealth, to use, v. Lentz, 353 Pa. 98, 44 A. 2d 291 (1945). See also Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594 (1950); R. A. Holman

& Co., Inc. v. Securities & Exchange Commission, 112 U.S. App. D.C. 43, 47, 299 F.2d 127, 131, cert. den. 370 U.S. 911 (1962).

The legislature has provided a statutory procedure in both The Clean Streams Law,[3] supra, and in section 20 of the Act of December 3, 1970, supra, 71 PS §510-21, sufficient to insure that Sellersville is not deprived of its due process rights. This procedure is clearly being followed in this proceeding.

In summary, we hold that the department has the statutory authority to issue a sewer connection ban order to Sellersville. We also hold that the department has satisfied its burden of presenting sufficient evidence to justify its imposition of the ban on any additional discharge into the Sellersville sanitary sewer system: F. & T Construction Company v. Department of Environmental Resources, supra.

One issue remains, that of the economic hardship visited upon Sellersville and its property owners by virtue of this order.

We hold that the violations of The Clean Streams Law, supra, by Sellersville, which formed the foundation for the issuance of this order, must be abated in spite of the financial hardship which abatement activities to cure such violations might entail. See Commonwealth ex rel. Alessandroni v. Coudersport Borough, 85 Dauph. 82 (1966); Commonwealth ex rel. Alessandroni v. Confluence Borough et al., 87 Dauph. 214 (1967); affirmed 427 Pa. 540, 234 A. 2d 852 (1967).

## ORDER

And now, July 31, 1973, the order issued by the Department of Environmental Resources on March 10, 1972, is hereby affirmed, and the appeal of Sellersville Borough is dismissed.

---

[3] Section 7, 35 PS §691.7.